ALLEN *v.* GADDIS.*

(Division B.    May 12, 1924.)

[100 So. 29.    No. 23978.]

1. PRINCIPAL AND AGENT.    *Instruction as to custom and usages held improper to show agent's authority to draw draft.*

   Where a person is engaged in business under a trade-name and has a manager operating a part of the business who is authorized to buy lumber for the account of his principal, which manager gives a draft on his principal signed by himself, and such draft is not paid on presentation, it is error to give an instruction as to the custom of dealing between principal and other parties in the community with reference to such drafts, where the purchaser of the draft did not know of and rely upon such custom, but relied upon a telephone communication between himself and the principal for the authority of the agent to draw the draft.

2. APPEAL AND ERROR.    *Giving of erroneous instruction as to custom held not cured.*

   In such case the error is not cured by the fact that the draft was given for lumber purchased for the principal by the agent and retained by the principal, though the jury might have been under duty to find from the testimony that the agent had authority to make the draft on his principal.

---

*Headnote 1.    Agency 2 C. J., section 281 (1925 Anno.), section 737; Customs and Usages, 17 C. J., section 95; 2.    Appeal and Error, 4 C. J., section 3026.

APPEAL from circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Action by T. B. Gaddis against J. T. Allen. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Watkins, Watkins & Eager,* for appellant.

The question here presented is not that the telephone communication is inadmissible but that the testimony in reference thereto establishes only a *prima-facie* case which was completely overcome and defeated by the positive testimony of the defendant. *St. Paul Fire & Marine Insurance Company v. McQuaid,* 114 Miss. 440; *Young* v. *Seattle Transfer Company,* 33 Wash. 225, 74 Pac. 375, 99 Am. St. Rep. 942, a review of other decisions.

The principle in the Young case is identical to that of the case at bar. The testimony was admissible but insufficient to sustain a verdict. It is important to observe that the presumption that the person who answers the telephone is authorized to speak, thereby making out a *prima-facia* case, extends only to the communications relating to the usual business carried on at the place from which the telephone communication comes. *Young* v. *Seattle Transfer Co., supra; Planters Cotton Oil Co.* v. *Western Union Tel. Co.,* 126 Ga. 621, 6 L. R. A. (N. S.) 1180, 55 S. E. 495; *Union Const. Co.* v. *Western Union Tel. Co.,* 168 Cal. 298, 125 Pac. 242.

The contention of the appellant is also borne out by the cases of *Murphy* v. *Jack,* 142 N. Y. 215, 40 Am. St. Rep. 590, 36 N. E. 882; *B. Company* v. *Adams,* 35 Ill. App. —; *People* v. *McKane,* 143 N. Y. 474, 38 N. E. 590; *Stepp* v. *State,* 31 Tex. C. R. App. 349, 20 S. W. 753; *People* v. *Strollo,* 191 N. Y. 42, 83 N. E. 573; *Deering Co.* v. *Shunpik,* 67 Minn. 348, 69 N. W. 1088; *Harrison G. Co.* v. *Penn. R. Co.,* 145 Mich. 712, 108 N. W. 1081; *Lord Electric Co.* v. *Morrill,* 178 Mass. 304, 59 N. E. 807; *Barrett* v. *Magner,* 105 Minn. —, 127 Am. St. Rep. 531, 117 N. W. 245.

We therefore respectfully submit and urge that the last instruction given for the plaintiff was erroneous in that it submitted to the jury whether or not the defendant, J. T. Allen, ratified the act of Williams over the telephone. All remaining instructions given on behalf of the plaintiff were erroneous because they proceeded upon the theory that the plaintiff relied upon the custom of the defendant in paying drafts drawn by Williams, when the testimony of the plaintiff shows that he neither knew of said custom nor did he rely upon said custom nor any other custom in the case at bar, but relied wholly upon the alleged telephone conversation which we submit is wholly insufficient and inadequate to make out a case and which at most is a mere presumption tending to produce a *prima-facia* case, and which was completely overcome by the testimony of the defendant.

*Howie & Howie,* for appellee.

Opposing counsel would attempt to draw the entire attention of the court to one feature alone in this case, namely: the telephone conversation and the identity of the party answering as manager of the Mercantile Lumber Company. A fair reading of the testimony in this case is all that is necessary to convince this court that this is not necessarily the only issue. They try to claim that we can stand only on the telephone conversation and our ability to identify the party talking to Mr. Allen as being Mr. Allen himself. This is not correct asd is not a correct application of the law to the facts in this case.

In the first place Mr. Gaddis does not have to stand alone on the ratification. He can stand both on the ratification and the business custom of the appellant or upon any other legal rights which he may have under his purchase of this draft. If the evidence shows that the appellant had authorized J. D. Williams to draw drafts in payment for lumber and can convince the jury that this draft was so given then he is entitled to a verdict. Again if he can show by the evidence sufficiently to convince the jury that Allen had held out J. D. Williams as

his agent with power to draw this or similar drafts to · such an extent that people were reasonably lead to believe that Williams did have such authority then on this theory he will be entitled to a verdict. Again if he can convince the jury that Allen had established this method of paying for lumber as his business custom and Mr. Gaddis knew of this business custom and relied upon it then the verdict should stand.

The case of the *Marine Insurance Company* v. *McQuaid,* 114 Miss. 444, is not on all fours with the present case. In the McQuaid· case they were attempting to alter the terms of a written contract. In this case the only circumstance that tended to bind the company was the telephone conversation between McQuaid and the Insurance Agent's office. In our case it is quite different. It is a question of business custom established by the appellant.

Counsel contend that the testimony was properly admitted but that it was not sufficient to back up the jury in finding a verdict. They forget the general rule which requires that all of the facts and circumstances be taken into consideration and that when these facts and circumstances are such as to leave any question of doubt as to what the truth was, then it must be passed to the jury for their decision. This court even in the McQuaid case, which is the weakest case that we have read on questions of this kind, held that the court should take into consideration "all of the evidence" connected with the case. When this is done there can be no doubt about there being sufficient evidence to sustain the verdict of the jury. In the present case the jury had the flat denial of Mr. Allen. Yet, at the same time, it had the letter from Mr. Allen which flatly contradicted his sworn testimony and also had all of the other facts which tended to show very strongly that Allen had received the lumber under the same circumstances and same conditions as that under which he stated Williams was authorized to issue drafts. It is a question for the jury to decide under proper in-

structions of the court, whether we have met the burden of proof and this they have decided.

The entire question of conversation over the telephone is discussed with great learning by the court in the case of *Central Union Tel. Co.* v. *Fairley* (Ind.), 10 Am. St. Rep. 128, p. 135. The Young case is not only out of line with a great weight of authority but is very dissimilar from the present case. Wigmore states the rule very concisely in section 2155. Those cases holding such conversations admissible are by far the better reasoned and the weight of authority sustains the admissibility of such proof.

The leading authorities and the ones generally cited in cases of this kind are *Godiar* v. *Ham. National Bank,* 116 Am. St. Rep. 173-174; *Wolfe* v. *Mo. Pac. R. Co.*, 97 Mo. 473; *Gen. Hospital Society* v. *New Haven Rendering Co.*, 118 Am. St. Rep. 175-176.

But we are not relying solely upon the telephone conversation. We established beyond dispute that it was the business custom of this appellant to permit Williams to buy lumber and pay for the same with drafts. We not only proved by our witnesses but by the admissions of Williams and the admissions of the appellant himself. The appellant himself testified that as far as the public knew this power of Williams' to buy lumber and issue drafts was unconditional.

We therefore respectfully submit that the jury was correctly instructed and that the verdict should stand as the facts justify the verdict on any of the principles of law announced by the instructions.

ETHRIDGE, J., delivered the opinion of the court.

The appellee Gaddis sued the appellant on a draft in the following words:
"$600.00                    ·                    8/12/1922.

"Thirty days after date pay to the order of W. H. Miles six hundred and no/100 dollars, value received, and charge the same to account of ———
                                        J. D. WILLIAMS.

"To Mercantile Lumber Co., Jackson, Miss."

Indorsed on back: "W. H. MILES."

The declaration alleges that before the expiration of the thirty days named, the same was indorsed by W. H. Miles and delivered to the plaintiff for valuable consideration, and it thereupon became the property of the plaintiff and has continued to be since that time and still is the property of the plaintiff. It further alleges that the draft was signed by J. D. Williams, and the plaintiff was informed by the defendant that it would be paid, and acting upon such authority bought and paid for the draft the full face value thereof. When the draft was presented for payment, payment was refused, and afterwards suit was brought thereon.

The plaintiff's testimony is: That about the time the draft is dated, and before the maturity thereof, Miles presented the draft to him, requesting that it be cashed. That the plaintiff thereupon called up the office of appellant in Jackson, Miss., and asked for Mr. Allen and asked him if the draft was all right and if Williams had authority to draw the draft, and was informed by the person talking that it was all right. That thereupon he cashed the draft, and before its maturity placed it in the bank for collection, and it was returned unpaid. That waiting some time afterwards expecting the draft to be paid, he wrote a letter to the appellant requesting him to pay the said draft. That in response to the said letter the appellant replied as follows:

"We have yours of the 23d desiring to know if we could mail you our check now for six hundred dollars, to cover draft given by Mr. J. D. Williams to Mr. W. H. Miles. I am sorry to advise you that we will not take care of this draft. As a matter of fact, this draft was given to Mr. Miles simply through accommodation to him for a few days in order that he might ship us enough lumber to take up the draft when it was due, so in view of the fact as soon as Mr. Miles got this draft he simply

refused to ship us any more lumber, and the draft was given him with the understanding that he was to ship enough lumber to take up the draft when it was due.

"As to the writer giving out any information from our office that we would take care of any draft given by Mr. Williams, this was an error. We, of course, cash Mr. Williams' drafts when they are given to parties to whom we are due, and Mr. Williams immediately notifies this office to this effect sending in credit memorandum. In this instance the writer knew nothing of this draft being given, as it was a little personal arrangement between Mr. Miles and Mr. Williams, so we are under no obligations whatsoever to cash this draft and you will have to look to Mr. Miles for the money."

Plaintiff proved by Miles, the payee in this draft, that the draft was given him in payment of lumber delivered to the Mercantile Lumber Company and that he had never been paid otherwise for the lumber and that he did not owe the Mercantile Lumber Company, under which name Allen the appellant was doing business, anything. Miles also testified to the conversation over the phone in support of Gaddis' testimony.

Williams, the drawer of the draft, testified that he was employed by the Mercantile Lumber Company or J. T. Allen, as manager of the operating part of the business of the appellant at Pelahatchie, Miss., and that he also bought lumber on behalf of the appellant He testified that he had no authority to draw a draft except with the consent of the appellant, but that when he bought lumber he usually gave a sight draft on Allen for the payment thereof, and in such cases that Allen accepted such drafts. He testified, however, that Allen did not accept all drafts drawn on him by said Williams. Williams' testimony with reference to the giving of the draft in the present case is that he gave the draft to enable Miles to load and deliver lumber to the appellant so that he could pay his labor for the loading and hauling and manufacture of the lumber.

The appellant testified for the defense and denied having the conversation over the telephone with Gaddis, and also testified that Williams did not have general authority to draw drafts on him in the business and that he could only draw drafts when authorized. He testified that Williams was managing the operating department of the business at Pelahatchie and that he, the appellant, operated the paying department from the Jackson office, and that when Williams bought lumber he generally gave a sight draft and furnished the appellant at the Jackson office a memorandum of the transaction, and in such cases he paid such drafts. He testified that Miles was in debt to him at the time of the transaction and owed him money on a contract which they had before arranged by which the appellant advanced Miles by way of accommodation large sums of money to enable Miles to conduct his business and furnish the appellant lumber.

It was shown by Williams' testimony on cross-examination that he purchased lumber from some ten or twelve small mills around Pelahatchie, Miss., and that he usually paid for this lumber by a draft drawn as in the present case.

The plaintiff's testimony was that he had only bought two drafts, the present one and one prior draft drawn by Williams, and it is also shown that he did not know Allen personally and could not swear to his voice so as to identify it in the phone conversation, and also testified that he relied upon the phone conversation in the transaction.

There was a verdict for the plaintiff, and the defendant appeals and assigns several of the rulings and instructions for error.

The court instructed for the plaintiff that if the jury believe from a preponderance of the evidence that the defendant got the lumber for which this draft was given and has not returned the same, they shall find for the plaintiff. The jury was also instructed for the plaintiff that it is not material what secret agreement or instructions the defendant gave Williams, if this was not known

to the public with whom he was dealing, and if the jury believe from a preponderance of the evidence that the defendant and Williams conducted the business in such way as to lead the public and the plaintiff to reasonably believe that Williams did have authority to issue drafts like this to find for the plaintiff, and that one dealing with an agent of another where the agent is acting about the business of his principal that he had the right to act upon the customary way of the principal's method of allowing his agent to conduct his business, and if the jury believe from a preponderance of the evidence that the defendant held out Williams as his agent and authorized him to draw drafts like this one in payment for lumber, to find for the plaintiff regardless of secret understandings between the defendant and his agent. The court further gave the following instruction:

"The court instructs the jury for the plaintiff if you believe from the preponderance of the evidence that Mr. Gaddis purchased the draft in question without any knowledge of any claim of defense to the payment of same by Mr. Allen and that Mr. Allen customarily paid drafts of similar kind issued by Mr. J. D. Williams in the regular course of his business, then you should find for Mr. Gaddis, the plaintiff, regardless of whether the lumber was or was not delivered by Miles or whether Williams reported the issuance of the draft or not."

Also: "The court instructs the jury for the plaintiff that, if they believe by the preponderance of the evidence that the defendant ratified the act of Williams over the telephone, they shall find for the plaintiff."

The court instructed for the defendant that in order to establish a business custom of dealing so as to bind the defendant, it is not sufficient to show by the evidence the occurrence of a few isolated instances in reference to the matter and custom sought to be shown to have been established, but the manner and method of dealing must have been sufficient to have created in the minds of those dealt with the fact of such custom. And further that in

the case before you it was necessary for the plaintiff, T. B. Gaddis, to have known of said custom, and in addition relied upon said custom, in order to hold the defendant liable for the draft drawn, and that the burden of proving this was upon the plaintiff.

In view of Gaddis' testimony that he did not have knowledge of the dealings with other parties and that he relied upon the telephone conversation with the Jackson office in purchasing said draft, we think the instruction given the plaintiff to the effect that the custom of Allen in dealings in which Williams was permitted to draw drafts, and that they would find for the plaintiff regardless of whether lumber was delivered by Miles or was not, or whether Williams reported the issuance of the draft or not, was error. The evidence with reference to the issuance of these other drafts was admissible for the purpose of showing that Williams in fact had authority to issue such drafts in payment of lumber purchased and for the purpose of showing the probability of the plaintiff's theory that the defendant admitted this authority over the telephone. And the question should have been submitted to the jury on the other features of the case developed by the plaintiff.

It is insisted by the defendant that regardless of whether this is error or not, the judgment should be affirmed because Miles testified that the draft was given for the purchase of lumber and that that is not specifically denied and that the plaintiff was entitled to recover at all events if that be true.

We are not prepared to say on the whole record that Miles' testimony is not disputed, but if the record does show that there is not really a dispute about the matter, the plaintiff should have rested his case upon that ground. Allen testified that Miles owed him money already advanced to him, and that Miles had delivered a load of lumber in payment of the former advance, and that all of it had not been paid. Williams' testimony, if believed, shows that the draft was given to enable Miles

to bring in other lumber.  We think the case must be reversed for the error above indicated and the cause remanded for a new trial.

In view of the fact that there must be a new trial, we think it competent to introduce evidence in reference to the conversation over the telephone, and that  taking all of the facts in evidence, it is for the jury to say whether or not that was an admission of the authority of Williams to draw.the draft here involved.  It is not competent for the purpose of establishing a verbal acceptance because an acceptance must be in writing, but it is competent to establish Williams' authority to draw drafts which the appellant would be bound to accept.  As the authority of his agent may be established by admissions, and if the agent had authority is issue the draft here involved, then it would be a binding obligation, because it would be equivalent to the appellant drawing upon himself.

*Reversed and remanded.*